# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT MILLER, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| *versus* | § CIVIL ACTION NO. 1:13-1388 |
| | § |
| CAROLYN W. COLVIN, | § |
| Acting Commissioner of | § |
| Social Security, | § |
| | § |
| *Defendant*. | § |

## **REPORT AND RECOMMENDATION**

Scott Miller ("Miller") seeks review of an adverse decision on his applications under the Social Security Act for disability insurance benefits and supplemental security income.[1]

### I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Courts cannot retry factual issues *de novo* or substitute their interpretations of

---

[1] Disability Insurance, authorized by Title II of the Social Security Act and funded by social security taxes, provides income to insured individuals forced into involuntary, premature retirement by reason of disability. Supplemental Security Income, authorized by Title XVI of the Social Security Act and funded by general tax revenues, provides an additional resource to assure that disabled individuals' incomes do not fall below the poverty line.

administrative records for that of the Commissioner when substantial evidence supports the decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Neither can they overturn administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (summary order).

## II. Background

*A.   Personal*

Miller, born in 1965, has worked construction or in a kitchen his entire career. (T. 51). He has a history of pain in his knee, back, neck, and shoulders. (T. 83). In 2003, he had left inguinal hernia repair. (T. 84). He also had bilateral rotator cuff surgeries in 2004 and 2005, and knee arthoscopy in 2006. (T. 411). In 2011, he had a disk removed from his neck, but continues to suffer from pain because another disk collapsed post-surgery. (T. 53, 84).

Miller receives trigger point injections in his neck; he has a Tens unit; wears braces on both knees, both wrists, as well as his neck and back; when ambulating, he uses a prescribed cane; and he takes pain medications, muscle relaxers, and anti-inflammatory medications. (T. 84-85, 89).

*B.   Claim*

Miller applied for disability insurance benefits and supplemental security income due to "herniated discs, lower back injury, knee injuries, and arthritis," commencing February 7, 2011. (T. 247). In September 2012, an evidentiary hearing was held before an administrative law judge, Carl E. Stephan ("ALJ Stephan"). (T. 23, 77-92). Miller, accompanied by a non-attorney representative, attended and testified. (*Id.*). He claimed that range of motion in his neck is limited, causing him pain to look up and, at times, turning left or right; he has

to constantly move to remain comfortable; he can lift five pounds, or a bag of groceries; standing is more comfortable than sitting, but standing or sitting for 10 minutes is difficult; he uses a cane to walk; he can walk without the cane 30 feet and with the cane 50 to 60 feet; he can bend with pain; he cannot squat; and both knees hurt. (T. 85-88). His medications cause him to be drowsy with minimal pain relief. (T. 85, 89). He does not sleep well, waking up throughout the night. He performs very few chores; he occasionally needs assistance with pulling up pants or putting on socks and shoes; and he uses a pedestal to make it easier to get in and out of his bed. (T. 89-91).

ALJ Stephan determined that vocational expert testimony was needed; hence, in May 2013, a supplemental hearing was held and a vocational expert, Marian Marracco, MS, CRC ("VE Marracco"), testified. (T. 23, 38-76, 177-79).

ALJ Stephan denied Miller's applications in a written decision dated May 28, 2013. (T. 23-31). The Appeals Council denied Miller's request to review. (T. 1-6). Miller then instituted this proceeding.

## IV. Commissioner's Decision[2]

ALJ Stephan found that Miller has severe impairments of degenerative disc disease of the neck and lower back, and degenerative joint disease of the shoulders and knees, but none is of such severity as to be presumptively

---

[2] ALJ Stephan utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

disabling under 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").[3] (T. 25-26). ALJ Stephan noted that despite Miller's multiple surgeries and objective diagnostic findings in the past, "relatively few abnormal findings" were revealed in a current physical examination by a state agency consultant. (T. 26).

ALJ Stephan next addressed Miller's "residual functional capacity."[4] He found that, despite his impairments, Miller retains capacity to perform work at the light exertional level with certain limitations described in the note below.[5] (T. 27).

ALJ Stephan consulted with VE Marracco to determine if Miller can still perform any past relevant work. VE Marracco testified that he can continue to perform two past jobs as grocery clerk and food sale representative. (T. 29, 59-60, 65-66). VE Marracco acknowledged that Miller *actually* performed that work

---

[3] When administrative adjudicators determine (at Step 2) that claimants have severe impairments, they next decide (at Step 3) whether those impairments are disabling under 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). There, the Commissioner publishes a series of impairments describing a variety of physical and mental conditions, indexed according to the body system affected. *Id*. Listed impairments are presumptively disabling. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

[4] Residual functional capacity is defined and discussed in Section VI.*A*.1, *infra*.

[5] ALJ Stephan assessed Miller's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except lift or carry a maximum of 10 pounds frequently or 20 pounds occasionally; sit for one hour at one time for a total of up to eight hours, and stand or walk for up to two hours at one time, for a total of four hours each, in an eight-hour workday; with only occasional climbing of ladders, crawling, and balancing; ability to perform frequent climbing stairs, stooping, and crouching; with ability to perform frequent, reaching bilaterally in all directions; with a need to avoid exposure to extremes in temperatures and vibration.

(T. 27).

at the medium exertional level, which exceeds his residual functional capacity. (*Id*.), but testified that it is *generally* performed in the national economy at the light exertional level. (T. 29, 65-66).

Based on this testimony, ALJ Stephan found (at Step 4 of sequential evaluation) that Miller can still perform his past relevant work as it is generally performed. ALJ Stephan found, alternatively (at Step 5 of sequential evaluation), that a person with Miller's residual functional capacity can perform alternative and available work as a night cleaner or a courier exists in the national economy. (T. 29-30). When making this supplementary finding, ALJ Stephan relied again on VE Marracco's testimony and the framework of Medical-Vocational Rule 202.21.[6] Therefore, Miller's application was denied. (*Id*.).

## V. Points of Alleged Error

Miller's brief proffers two points of error:

1. The Administrative Law Judge failed to comply with CFR 404.1527 by failing to accord adequate weight to the opinion of the claimant's treating physicians; and

2. The claimant's residual function capacity as determined by the Administrative Law Judge is not supported by the substantial evidence in the Record.

(Dkt. No. 11, p. 1). Both points ultimately suggest that ALJ Stephan's residual functional capacity finding is infirm due to improper weighting of medical opinion evidence. They are flip sides of the same coin. The first argues that ALJ Stephan erred in failing to give more or "adequate" weight to treating-source opinion while the second argues that ALJ Stephan erred in giving great weight to one-time, consulting-source opinion. Although not specifically articulated, the

---

[6] The Medical Vocational Guidelines are a matrix of general findings established by rule as to whether work exists in the national economy that a person can perform. When properly applied, they ultimately yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996).

intended inference is that ALJ Stephan would have found Miller disabled, or assessed his residual functional capacity more restrictively, had credibility of medical-source opinion been assessed correctly.

## VI. Discussion and Analysis

It is appropriate, first, to discuss "residual functional capacity," and identify legal principles that govern its determination:

A.  *Governing Legal Principles*

   1.  Residual Functional Capacity

Administrative law judges assess and articulate claimants' "residual functional capacity" before considering whether severely impaired persons can perform their prior relevant work or alternative available work. This term of art refers to what claimants can still do in work settings despite physical and/or mental limitations caused by their impairments and any related symptoms, such as pain. *See* 20 C.F.R. §§ 404.1545, 416.945. Administrative law judges thus decide whether applicants, notwithstanding their severe impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis. *See* SSR 96–8p, TITLE II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 61 Fed. Reg. 34474, 1996 WL 374184, at *4 (SSA July 2, 1996).

When *assessing* residual functional capacity, an administrative law judge must consider "all of the relevant medical and other evidence." *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). All impairments, *i.e.*, both severe and nonsevere, must be factored into residual functional capacity determinations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; SSR 96–8P, 1996 WL 374184, at *5. Then, when *articulating* a claimant's residual functional capacity, administrative law judges must identify and evaluate a claimant's

limitations relating to specific physical and mental functions that correspond with ordinary work activities. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also* SSR 96–8p, 1996 WL 374184, at *1. These functions include *physical* abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions, *mental* abilities such as understanding, remembering, carrying out instructions, and responding appropriately to supervision, and *other* abilities that may be affected by impairments, such as seeing, hearing, and the ability to tolerate environmental factors. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also* SSR 96–8p, 1996 WL 374184, at *5–6.

2. Evaluation of Medical Opinion

Administrative law judges rely principally on medical source opinion when assessing an impaired individual's ability to engage in work-related activities. The Commissioner categorizes medical evidence by "sources" described as "treating,"[7] "acceptable"[8] and "other."[9] Evidence from all three sources can be

---

[7] *See* 20 C.F.R. §§ 404.1502, 416.902 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

[8] "Acceptable" medical sources are licensed physicians (medical or osteopathic doctors), psychologists, optometrists, podiatrists, and speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). "Acceptable medical source refers to one of the sources described in § 404.1513(a) who provides evidence about your impairments. It includes treating sources, nontreating sources, and nonexamining sources." 20 C.F.R. §§ 404.1502, 416.902. An acceptable medical source opinion or diagnosis is necessary to establish existence of a medically determinable impairment. SSR 06-03p, TITLES II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006).

[9] "Other" sources are ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2. Evidence from these sources "is evaluated on key issues such as impairment severity and functional effects." *Id.*, at *2-3. "Other" source opinions, even when based on treatment and special knowledge of an individual, never enjoy controlling weight presumptions. *Id.*; *see also* SSR 96-2p, TITLES II AND XVI: GIVING CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS, 1996 WL 374188, at *1 (SSA July 2, 1996) (explaining controlling-weight factors). Nor can "other" source opinion be relied upon to establish existence of a medically determinable impairment. SSR 06-03p, 2006 WL 2329939, at *2.

considered when determining severity of impairments and how they affect individuals' ability to function. *See* SSR 06–03p, Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 2006 WL 2329939, at *4 (SSA Aug. 9, 2006) ("Although the factors in 20 C.F.R. 404.1527[c] and 416.927[c] explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'").

A "treating physician rule" requires administrative law judges to give controlling weight to opinions of treating physicians regarding the nature and severity of impairments when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record."[10] But, when treating source opinion swims upstream, contradicting other substantial evidence, such as opinions of other medical experts, it may not be entitled to controlling weight.[11] A treating physician's opinion may be discounted when it is internally inconsistent.[12] Similarly, treating source opinion that lacks underlying

---

[10] 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also* SSR 96-2p, 1996 WL 374188, at *1-2; *see also Sanders v. Commissioner of Soc. Sec.*, No. 11-2630-cv, 2012 WL 6684569, at *2 (2d Cir. Dec. 26, 2012); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

[11] *See Williams v. Commissioner of Soc. Sec.*, 236 Fed. App'x 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

[12] *See Micheli v. Astrue*, No. 11-4756-cv, 2012 WL 5259138, at *2 (2d Cir. Oct. 25, 2012).

expertise,[13] or that is brief, conclusory and unsupported by clinical findings,[14] or appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy is reasonably suspected, can be rejected.[15]

State agency medical consultants are recognized experts in evaluation of medical issues in disability claims under the Act. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Accordingly, their opinions generally constitute substantial evidence. *See Russell v. Colvin*, No. 5:13–cv–1030 (MAD/CFH), 2015 WL 570828, at *12-13 (N.D.N.Y. Feb. 11, 2015) ("The opinions of consultative examiners . . . may constitute substantial evidence where, as here, it is supported by the medical evidence in the record.") (citing cases). Consultative opinions can be afforded even greater weight than treating-source opinions when there is good reason to reject treating source opinion, and substantial evidence supports them. The Commissioner instructs:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment

---

[13] *See Terminello v. Astrue*, No. 05-CV-9491, 2009 WL 2365235, at *6-7 (S.D.N.Y. July 31, 2009); *Armstrong v. Commissioner of Soc. Sec.*, No. 05-CV-1285 (GLS/DRH), 2008 WL 2224943, at *11, 13 (N.D.N.Y. May 27, 2008).

[14] *See Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Alvarado v. Barnhart*, 432 F. Supp. 2d 312, 321 (W.D.N.Y. 2006).

[15] *See Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006); *see also Labonne v. Astrue*, 341 Fed. App'x 220, 225 (7th Cir. 2009); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96–6p, TITLES II AND XVI: CONSIDERATION OF ADMINISTRATIVE FINDINGS OF FACT BY STATE AGENCY MEDICAL AND PSYCHOLOGICAL CONSULTANTS AND OTHER PROGRAM PHYSICIANS AND PSYCHOLOGISTS AT THE ADMINISTRATIVE LAW JUDGE AND APPEALS COUNCIL LEVELS OF ADMINISTRATIVE REVIEW, 1996 WL 374180, at *3 (SSA July 2, 1996).[16]

When controlling weight is not afforded to treating-source opinion, or when medical opinion from non-treating and consultative medical sources is evaluated, an administrative judge must consider certain regulatory factors to determine how much weight, if any, to give such opinions: (1) length of treatment relationship and the frequency of examination; (2) nature and extent of treatment relationship; (3) evidence that supports a treating physician's report; (4) how consistent a treating physician's opinion is with the record as a whole; (5) specialization of a physician in contrast to condition being treated; and (6) any other significant factors. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

B.   *Medical Evidence*

Medical evidence at issue here came from four sources, two treating and two consulting. Evidence from the treating sources, Surinder P. Jindal, M.D. (pain management specialist) and Kenneth K. Hansraj, M.D. (orthopedic surgeon) consisted solely of treatment notes. Doctors Jindal and Hansraj did not

---

[16]   *See also, e.g., Netter v. Astrue*, 272 Fed. App'x 54, 55–56 (2d Cir. 2008) (summary order); *Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995).

identify and evaluate limitations relating to specific physical functions corresponding with ordinary work activities.

Evidence from the consulting sources, Kautilya Puri, M.D. (examining neurologist) and Luis A. Fuchs, M.D. (nonexamining orthopedic surgeon) contained "medical source statements" describing limitations regarding abilities to engage in work activities. Dr. Fuchs's statement, contained a full assessment of Miller's physical abilities to do work-related activities.

*Surinder P. Jindal, M.D. (treating pain management specialist)*

Dr. Jindal is a pain management specialist, and treated Miller during forty-four visits, between January 2009 and April 2013. (T. 405, 451-76, 477-81, 484-92, 507-12, 594-61). With minor variations, Dr. Jindal's treatment notes at each visit typically recorded decreased sensation in L4, L5, and S1 regions of the spine; tenderness and spasms in the lumbosacral muscles and (in several instances) positive straight leg raises.

On six occasions between December 2009 and May 2012, Miller applied with New York State for a handicapped parking permit. (T. 507-12). As part of that process, Dr. Jindal checked a box certifying that Miller had a "temporarily disability." (*Id.*). The application form defined a person with a temporary disability as "any person who is temporarily unable to ambulate without the aid of an assisting device, such as a brace, cane, crutch, prosthetic device, another person, wheelchair, walker or other assistive device." (*Id.*). In each application, Dr. Jindal filled in an "expected recovery date" but left blank what assistive device was needed. (*Id.*).

*Kenneth K. Hansraj, M.D. (treating orthopedic surgeon)*

Dr. Hansraj, an orthopedic surgeon and rehabilitation medicine specialist, treated Miller eight times between September 2011, and January 2013. (T. 496-506, 513-35, 584-93). He also performed cervical fusion on Miller in December 2011. (T. 524-28).[17]

*Kautilya Puri, M.D. (examining consultative neurologist)*

Neurologist Kautilya Puri, M.D., conducted an internal medicine examination in June, 2011. He observed Miller to be in no acute distress; gait normal; able to stand on heels and toes; squat moderately, less than halfway; stance normal. (T. 412). Miller needed no help changing for his examination or getting on and off the exam table; he was able to rise from the chair without difficulty. (*Id.*).

Upon examination, Miller had decreased flexion and extension in his cervical and lumbar spine. (T. 413). Miller performed straight leg raises negative bilaterally. (*Id.*). He had full range of motion in elbows, forearms, and wrists bilaterally. (*Id.*). His bilateral shoulders showed generalized mild decreased range of motion with local tenderness. (*Id.*). He had full range of motion of his hips, knees, and ankles bilaterally. (*Id.*). His joints were observed to be stable and nontender, except for bilateral knees, shoulders, hands, and back tenderness on palpation and movement. (*Id.*). No redness, heat, swelling, effusion. Miller's strength was 5/5 in both upper and lower extremities. (*Id.*). He had no cyanosis, clubbing, or edema; no muscle atrophy was evident. (*Id.*).

---

[17] Aside from describing his treatment relationship with Dr. Hansraj, Miller fails to identify any opinion that he contends should have been afforded controlling weight. (*See* Dkt. No. 11).

Dr. Puri diagnosed Miller with low back pain; cervical neck pain; multiple joints secondary to degenerative disk disease and degenerative joint disease; and status post surgery, as above, secondary to osteoarthritis. (T. 414). As part of his evaluation, Dr. Puri provided a medical source statement, in which he opined:

> The claimant did not have any objective limitations to communication, fine motor or gross motor activity. There were no objective limitations to the claimant's gait or to his activities of daily living on examination today. The claimant would have mild limitations to squatting and overhead reaching secondary to his complaints.

(T. 414).

Dr. Puri noted that Miller used a cane prescribed by his doctor, but opined "I do not feel it is necessary." He based this opinion on personal observation that Miller's gait was about the same with and without his cane. (T. 412).

*Luis A. Fuchs, M.D. (nonexamining consultative orthopedic surgeon)*

In October 2012, nonexamining consultant, Louis A. Fuchs, M.D., conducted a longitudinal review of Miller's medical treatment records, including Dr. Puri's report. Based on that review, Dr. Fuchs completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." (T. 548-56). He opined therein that Miller can occasionally lift and carry up to 50 pounds and frequently 20 pounds; sit for 8 hours at a time; stand and walk for 2 hours at a time for a total of 4 hours each in an eight-hour workday; has no limitations in his hands (reaching, handling, fingering, pushing, pulling) or feet; and can (a) continuously climb stairs, ramps, ladders and scaffolds, and balance, (b) frequently stoop, kneel, crouch and crawl, (c) continuously tolerate exposure to unprotected heights, moving mechanical parts, operate a moving vehicle, and

humidity and wetness, but (d) never tolerate exposure to extreme cold, heat, or vibrations. (T. 548-52). Dr. Fuchs further opined that Miller did not require the use of a cane to ambulate. (T. 549).

Dr. Fuchs also responded to a "Medical Interrogatory Physical Impairments(s) - Adults" form submitted to him by ALJ Stephan and to supplemental questions submitted by Miller's representative. (T. 554-57, 573). Therein, Dr. Fuchs specified Miller's impairments and cited objective medical evidence (or lack thereof) supporting them. (*Id.*). He stated that Miller's impairments do not meet the Commissioner's listing of presumptively-disabling impairments,[18] and restated his findings regarding Miller's functional limitations. (*Id.*).

Included in his response was a reference to "Ex. 15F,"[19] and a comment that "ortho & neuro exams do not [show need for an] assistive device as motor strengths are WNL." (T. 557). He concluded that "objective findings do not justify such limits. It appears limitations were based upon subjective responses of Scott Miller." (*Id.*).

C. *Miller's Challenges; Commissioner's Responses*

Miller first argues that Dr. Jindal's certifications on handicap-parking applications constitute treating-source opinion that he needs an assistive device for ambulation. Miller maintains that such opinion is supported by substantial evidence, and cites the court to Dr. Jindal's treatment notes (summarized in

---

[18] See note 3, *supra*.

[19] The applications for handicapped parking permits were identified at the administrative level as Exhibit 15F. (T. 507-12).

Section VI.*B, supra,* and in Plaintiff's brief, Dkt. No. 11, pp. 5-6). Miller contends that Dr. Jindal's opinions, therefore, should have been afforded controlling weight, but ALJ Stephan completely ignored them, thereby violating the treating physician rule. (Dkt. No. 11, pp. 3-7).

Second, Miller argues that ALJ Stephan's residual functional capacity finding is not supported by substantial evidence because he relied "solely upon the one-time examination of consultant, Dr. Puri and the opinion of consultative orthopedic medical expert, Louis A. Fuchs, M.D." instead of relying on his treating source specialists.

The Commissioner responds that Dr. Jindal's physician's certifications on handicap parking applications do not constitute medical assessments and opinions entitled to controlling-weight deference. Further, the Commissioner asserts that ALJ Stephan specifically addressed the issue of whether Miller requires a cane when ambulating, and found that Miller can ambulate effectively without a cane. Finally, the Commissioner argues that ALJ Stephan's finding regarding lack of need for a cane and his residual functional capacity finding are both supported by substantial evidence provided by consultative medical sources, and that "even presuming there was substantial evidence for plaintiff's position," the Commissioner's decision must be upheld under the very deferential substantial evidence standard.[20]

---

[20] The Commissioner's brief does not specifically address Miller's second point of error. (*See* Dkt. No. 15).

D.  *Application*

ALJ Stephan substantially adopted the opinions of consultative and non-examining orthopedic surgeon, Dr. Fuchs, when making his residual functional capacity finding.[21]  Legal underpinnings of Miller's two entwined arguments challenging that finding are undisputed.  The Commissioner articulates deference due treating-source opinion as follows:

> [W]e give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  On the flip side of that coin, courts state that administrative law judges should exercise caution before relying substantially on one-time, consultative evaluations and opinions conflicting with treating-source opinion:

> a consulting physician's opinions or report should be given limited weight. . . .  This is justified because consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day.  Often, consultative reports ignore or give only passing consideration to subjective symptoms without stated reasons.

*Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) (internal citations and quotations omitted); *see also Mitchell v. Colvin*, No. 09–CV–5429 (ENV), 2013 WL 5676289, at *6 (E.D.N.Y. Oct. 17, 2013) ("courts have repeatedly cautioned ALJs not to place substantial reliance on one-time consultative evaluations ").

---

[21]  *See* n. 5, *supra*.

When considered in context, however, Miller's arguments based on these underpinnings are not persuasive. Here, no treating medical source provided an assessment of Miller's physical and mental abilities to engage in work-related activities. The *only* such assessments in the evidence before ALJ Stephan came from consultative sources. Hence, ALJ Stephan acted with sound discretion when relying on consultative opinions when assessing residual functional capacity.

Miller's only specific contention regarding ALJ Stephan's alleged violation of the "treating physician rule" relates to his failure to discuss, evaluate and incorporate into his residual functional capacity finding Miller's need for a hand-held assistive device.[22] It is a stretch, however, to view Dr. Jindal's successive certifications of "temporarily disability" on handicap-parking applications as treating-source medical assessments presumptively entitled to controlling weight.[23] Such certifications, *i.e.*, check-the-box notations unaccompanied by supportive clinical findings, may suggest nothing more than accommodations of Miller's requests. Dr. Jindal's treatment notes do not otherwise purport to assess Miller's capacities for physical functions corresponding to ordinary work

---

[22] VE Marracco acknowledged that Miller could not perform his past light exertional work or any work at that exertional level while using a cane. (T. 74). The Commissioner recognizes that when a hand-held assistive device is medically necessary, a claimant's residual functional capacity may be less than for a full range of sedentary work. *See* SSR 96-9p, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK –IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN SEDENTARY WORK, 1996 WL 374185, at *7 (SSA July 2, 1996).

[23] *See Wiehe v. Colvin*, No. 13-CV-500S, 2014 WL 4829333, at *3 (W.D.N.Y. Sept. 29, 2014) ("a statement that a claimant is or is not disabled is not a 'medical opinion' entitled to any special significance, but is instead a determination within the exclusive purview of the Commissioner.").

activities. And, even if Dr. Jindal's certifications were reckoned as treating-source "opinion," they did not contain specific findings necessary to enable ALJ Stephan to find (a) that Miller's cane is medically-required or (b) a limitation reducing Miller's residual functional capacity to less than sedentary.[24]

On the other side of the ledger, both Dr. Puri and Dr. Fuchs provided assessments of Miller's functional limitations with respect to ordinary work activities. Both are recognized experts in evaluation of medical issues in disability claims under the Social Security Act. Dr. Puri's opinion was formed after a personal medical examination of Miller; Dr. Fuchs's opinion was formed after a review of Miller's longitudinal medical record. Both expressed opinions that Miller does not require a cane to ambulate. (T. 412, 565). Accordingly, their opinions can be given weight, even greater weight than opinions of treating physicians, when, as here, they are supported by substantial evidence.[25]

In sum, even if Dr. Jindal's "temporarily disability" certifications are viewed, *arguendo*, as treating-source medical opinion of need for an ambulatory assistive device, the evidentiary record demonstrated good cause for rejecting it. ALJ Stephan's credibility choices regarding medical source opinions are not reversible for failure to comply with the treating physician rule, and they are

---

[24] To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

See SSR 96-9p, 1996 WL 374185, at *7.

[25] Dr. Fuchs is a specialist with respect to the orthopedic impairments, and Dr. Puri is a specialist in the field of neurology. Their opinions are consistent with Miller's evidence set forth in the medical treatment record as a whole, including observations in treating sources' progress notes indicating no deficits of motor, sensory, or reflex abnormalities.

supported by substantial evidence. Miller has identified no error in this respect that warrants remand.

## VII. Recommendation

The Commissioner's decision denying disability-based benefits should be AFFIRMED.

## VIII. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the   20   day of   February   2015.

*Earl S. Hines*
Earl S. Hines
United States Magistrate Judge